SAVOY, Judge.
Plaintiff instituted suit in workmen’s compensation for total permanent disability, medical expenses, penalties and attorney’s fees against Hartford Accident & Indemnity Company, the insurer of her former employer, French Unique Cleaners and Laundry. She alleged that on April 28, *805 1958, during her employment as a “checker” at her employer’s business establishment at 202 Jackson Street, in Alexandria, Louisiana, she slipped and fell to the concrete floor, and received disabling injuries; and, further, that defendant arbitrarily withheld the payment of compensation benefits.
Defendant filed an answer admitting plaintiff’s employment and the insurance policy, but denying that plaintiff sustained any accidental injury while in the employment of her employer, and alleging that the plaintiff’s duties were not hazardous in nature. Defendant alleged in the alternative that plaintiff had fully recovered from any injury received in her employment by May 27, 1960, the date through which plaintiff had been paid compensation benefits of $19.50 per week, and that any disability which plaintiff may now have is due solely and exclusively to natural causes, or to extraneous causes or conditions in no manner connected with her employment.
Defendant filed a reconventional demand against plaintiff for the return of the amount of $1,833.00 paid in compensation benefits and $331.00 paid in medical expenses, alleging that the payments were made through inadvertence and error.
The trial court determined that plaintiff did have pre-existent degenerative arthritis which had not progressed to the stage of disabling her, and that this condition was aggravated by the fall of April 28, 1958, to the extent of eventually producing disability; but that this aggravation had subsided and the disability suffered by reason of the accident had ended at approximately the time defendant discontinued the payment of benefits. Accordingly, judgment was entered in favor of defendant, dismissing the lawsuit with prejudice at plaintiff’s cost. The reconventional demand of defendant was rejected. A motion for a new trial by plaintiff was denied.
From this judgment, plaintiff has appealed to this court, and defendant has filed an answer to appeal with respect to its reconventional demand.
The main issue on this appeal is whether there is a causal relationship between the accident on April 28, 1958, and any disability suffered by plaintiff.
Plaintiff maintains that the trial court erred by not finding that plaintiff showed by a reasonable possibility that the fall aggravated and activated a dormant preexisting condition, causing plaintiff to become disabled, and that the burden of proof was then placed upon defendant to establish that the disability present at the time of the trial was not caused or aggravated by the accident. Also, that the court erred in holding plaintiff to strict proof of the specific injuries resulting from the accident and in holding that subsequent falls by plaintiff could have aggravated plaintiff’s condition, thereby restricting the compensation to a period of convalescence normal for the particular type of injury, apportioning the disability between that caused by the accident and that caused by the pre-existing condition.
Defendant maintained that the plaintiff has failed to establish by a preponderance of the evidence that she sustained a disabling accident as alleged while working for her employer, and further that she failed to establish by a preponderance of the evidence a causal connection between the accident and the alleged injury. Additionally, it is maintained that even if plaintiff did receive an aggravation of an old condition, which is denied, plaintiff has recovered to the same condition or level physically that she was in piror to the accident in question.
The evidence shows that plaintiff did fall to the concrete floor of her employer’s premises on or about April 28, 1958. Her employer was told simply that she had fallen to the floor. Plaintiff continued working daily, except for approximately six working days, until August 2, 1958. She made no complaints to her co-employees, who testified at the trial that they did not notice any limp or other evidence of disability on the part of plaintiff during this *806 period of over three months. Plaintiff testified that her knee did not give her any trouble until several days or a week after the fall; that she then took aspirin and anacin in order to bear the pain; and kept working, thinking her troubles were temporary. She testified that she did not limp at all, or make any complaints to her co-employees, because she wanted to keep her job which she needed so badly. She testified she had trouble sleeping because of the pain. When she left work on August 2, 1958, she testified she intended to return but decided to take off a few days for rest. She did not telephone her employer. On August 22, 1958, she saw a doctor and then notified her employer for the first time that the previous fall had injured her. Plaintiff testified that her knee has given her constant trouble since shortly after the accident, and she has used a walking cane since August 2, 1958.
Dr. Walter Murrell, a general practitioner in Alexandria, examined plaintiff on August 22, 1958, and January 29, 1959, and July 5, 1960, and followed her on a course of treatment during this period. He found a fracture of the upper tip of the fibula near the knee, and noted arthritis present in the knee with evidence of a spur formation. He treated her by a regime of injections, oral medicines and diathermy treatments which gave her only temporary relief. It was his opinion that the X-rays indicated some aggravation of plaintiff’s arthritic condition between August 22, 1958, and July 5, 1960, and that plaintiff was disabled on her last visit to him on July 5, 1960.
Dr. Murrell referred plaintiff to Dr. Paul M. Davis, Jr., an orthopedic surgeon in Alexandria, on November 14, 1958. Dr. Davis examined plaintiff on four occasions. On the first examination he found plaintiff to be disabled, with marked arthritic changes in her left knee, with evidence of spurring. He believed the arthritic changes existed prior to April 28, 1958. He found atrophy of the left thigh and left calf. He found no fluid in the knee joint, and there was not evidence of relaxation or tearing or injury to the cruciate .or the collateral ligaments. He also found an old healed fracture of the fibula. He recommended treatment, including injections of cortisone into the knee, and quadriceps exercises.
Dr. Davis next saw plaintiff on May 9, 1960. He found no atrophy, and noted that the left knee showed evidence of the same bony deformity on clinical examination which it had on the previous examination. Plaintiff had received no treatments for the prior six months. It was his opinion that plaintiff was using her leg pretty well since there was no atrophy, and that the aggravation occasioned by the accident had cleared and the plaintiff had returned to her pre-accident level. After further examinations of plaintiff, Dr. Davis also rendered reports on November 21, 1960, and June 20, 1961.
Dr. Eugene R. Pincus, a general practitioner of Alexandria, examined plaintiff on April 27, 1961, and May 15, 1962, and found some atrophy of the left thigh and calf on both occasions. On the first date he noted fluid in the left knee and that it was swollen. On both examinations he noted marked crepitation on movement of the knee, and that extreme flexion caused pain. It was his opinion that plaintiff was disabled from doing anything which required extensive standing or walking.
Dr. Ford J. McPherson, orthopedic surgeon of Shreveport, examined plaintiff on August 3, 1961. In addition to a healed fracture in the upper end of the fibula, he found an old healed fracture in the mid-shaft of the tibia. He found degenerative changes in the inner compartment of the left knee of fairly long standing. He found atrophy of the left thigh and calf, and crepitation and lumpiness of her knee, with restriction in flexion of 15 degrees. It was his opinion that plaintiff was disabled at the time, and that she had a tear of the medial meniscus, and the disability would continue indefinitely unless an operation was performed. He recommended an *807 operation to remove the torn meniscus, and, after visual observation of the degenerative arthritic changes, possibly removal of the kneecap.
Dr. Willis J. Taylor, orthopedic surgeon of Shreveport, examined plaintiff on March 14, 1962. He noted atrophy of the left thigh and calf, with crepitation, tenderness and restriction of flexion of the left knee. It was his opinion that she had a deranged medial meniscus of the left knee, questionable degenerative changes on the back of the left patella or kneecap and marked degenerative arthritic changes in the left knee especially in the medial aspect. He concluded that she was presently disabled to the extent of 15 per cent in her knee on loss of motion, or 8 per cent on the left extremity, and that she would be disabled to perform a job requiring her to stand on her feet for 8 hours per day. He also suggested the same operation recommended by Dr. McPherson.
After a careful review of the record, this Court is of the opinion that the findings of the trial court are supported by a preponderance of the evidence.
It is noted that certain facts of this case raise substantial doubts as to whether plaintiff actually sustained a compensable injury while employed for defendant’s insured. No one, not even plaintiff, thought too much about the fall at the time it happened. There was some conflict as to who saw plaintiff fall, and whether or not she was helped up from the floor. None of plaintiff’s co-workers noticed anything unusual about plaintiff’s behavior during a period of over three months after the fall, nor did they give any further thought concerning the fall until it was called to their attention. There is some inconsistency in plaintiff’s testimony concerning the pain she has suffered. Also, she testified to excruciating pain during these months after the fall, yet she missed only six days work, and several of these days were missed because of a death in the family. It is unusual that such pain could be withheld from co-workers for such a period of time.
It is also unusual that plaintiff left her employment for a period of three weeks, without telephoning her employer and giving any explanation for this time missed. She left her employment on August 2, 1958. Although plaintiff contends she was injured on April 28, 1958, she did not seek medical treatment or notify her employer of any injury until August 22, 1958.
The trial court considered that it had given plaintiff the benefit of the doubt by awarding compensation, and held in its reasons for judgment, as follows:
“In the opinion of this writer, the most that can be said for plaintiff’s case is that she did have pre-existent degenerative arthritis which had not progressed to the stage of disabling her, and that this condition was aggravated by the fall of April 28th to the extent of eventually producing disability. Dr. Davis, who admittedly was in a more favorable position to determine the matter by reason of his repeated examinations over a long period of time, felt that the aggravation had subsided by May 9, 1960, at which time the previously noted atrophy in the thigh and calf had disappeared. In this he is supported by Dr. Taylor who testified that by conservative treatment a condition of aggravated arthritis can be restored to the level existing before the aggravation occurred, and that ordinarily traumatic aggravation is a temporary condition lasting about four to six months. Differing somewhat in a minority view, Dr. McPherson is of the opinion that although the aggravation will subside there will be left some residual aggravation of a permanent nature. Nevertheless the finding by Dr. Davis that the atrophy had cleared is most convincing evidence that the aggravation had terminated and the afflicted leg had been restored to use. And, certainly it cannot be disregarded.
*808 “On the whole evidence it is concluded that whatever disability plaintiff had suffered by reason of the April 28th accident had ended prior to the discontinuance of Workmen’s Compensation benefits paid to her by defendant.”
In connection with the medical testimony, it is clear that plaintiff did not sustain a fracture of the tibia in her left leg on April 28, 1958, since it would have been impossible for plaintiff to have walked after the fall. Although it would be barely possible that plaintiff could have continued to work with a fracture of the fibua in her left leg and a tear of the medial meniscus in her left knee, each 'of the medical experts agree that it would be improbable that she could have continued working over a period of several months after such injuries, without limping or showing other outward evidence of am injury. The weight of the medical evidence supports a finding that the fracture of the fibula occurred simultaneously with the fracture of the tibia. Actually, it is not necessary that an exact determination be made in this regard, since both of these fractures are well healed and are of no. particular significance in themselves.
Although there is a conflict in the medical evidence, it is noted that among the doctors testifying it was generally agreed that a specialist in orthopedic surgery would be better .qualified to determine the nature and •cause of plaintiff’s disability. Also, that ■such an expert could make a more accurate ■evaluation by examining plaintiff on several ■occasions throughout a period of time, as opposed to one examination.
At the time of the examination by Dr. Davis on May 9, 1960, plaintiff had not received any treatments since the end of the year 1959. Nor did plaintiff receive any medical treatments from that time until the date of the trial.
On May 9, 1960, Dr. Davis found no atrophy in plaintiff’s left leg. We agree with the finding of the trial court that this is convincing evidence that any aggravation sustained by plaintiff had terminated by this date. As opposed to the testimony of Dr. Taylor and Dr. McPherson, who examined plaintiff on one occasion only, Dr. Davis was firm in his opinion that plaintiff did not have a tear of the medial meniscus in her left knee. Dr. Davis believed that plaintiff’s symptoms were due to the degenerative arthritic changes alone. Dr. Taylor also admitted that this was possible.
These findings are substantiated by the weight of the medical evidence that the degenerative arthritic changes in plaintiff’s knee, as shown by the X-rays, had not increased between November 14, 1958, and August 3, 1961. Each of the orthopedic surgeons testified that if plaintiff received an aggravation of a pre-existing arthritic condition in the knee, which resulted in persistent pain for a period of three years, there would be almost certainly an increase noted in these arthritic changes and the atrophy in plaintiff’s left leg would necessarily have been a continuous condition following the accident.
We agree with the trial court that plaintiff did not establish that she suffered a torn medial meniscus of her left knee, or a fracture of the tibia or fibula of her left leg, as a result of the fall at the French Unique Cleaners. By interpreting the evidence liberally in plaintiffs favor, we find she did receive from the fall an aggravation of a pre-existing degenerative change in her left knee, and that she had completely recovered from any effects of this aggravation by May 27, 1960.
All of the circumstances considered, we hold that there was no manifest error on the part of the trial court.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are assessed against defendant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.